ZOBEL, J.
Plaintiff (“the City”) moves to vacate an arbitration award on the ground that the arbitrator exceeded his powers and rendered an award requiring the City to commit an act prohibited by state law, G.L.c. 150C, §11(3).
FACTS
The parties entered into a collective bargaining agreement (“the Agreement”) governing terms and conditions of employment for certain of the City’s employees, including Daniel Salvato.
Salvato, who had been employed since October 1986, worked in the recycling, sanitation, and highway divisions of the Department of Public Works (“DPW”), a position also classified within the statutory provisions of the Civil Service statute, c. 31, §1 et. seq.
*660 On March 31, 1994, while working as an HMEO/Public Works Laborer in the DPWs sanitation division, Salvato fell off the back of a collection truck and sustained a reported injury.
At Somerville Hospital’s Emergency Room, a physician diagnosed neck, back, and left shoulder injuries and found Salvato unable to work for five days but fit to resume regular duties in a week.
The day of the accident, Salvato filed a City form entitled “Accident Reporting and Treatment Form— Employee Statement,” with Peter Tsouranis, the City’s worker’s compensation agent.
On March 31, 1994, Tsouranis referred Salvato to a City doctor, Dr. Manoj Agarwal, who examined him on April 4, 1994. Dr. Agarwal diagnosed “a lower left back strain and mild left shoulder strain.” He recommended physical therapy, medication, and the use of ice. Dr. Agarwal also determined that Salvato was “unable to return to work” and scheduled him for a follow-up examination on April 7, 1994.
Salvato did not return to work on April 7, 1994, but received weekly worker’s compensation benefits until April 19, 1994, when the City notified him his last payment would come April 27, 1994, because “there was no personal injury, no injury arising out of and in the course of employment, no disability, and no causal relation between personal injury and disability.”
On April 20, 1994, DPW Commissioner Robert J. Trahan (“Trahan”) wrote Salvato:
You are hereby ordered to report to the Somerville DPW Administration Building, Commissioner’s Office, at 7:30 a.m. on Thursday, April 21, 1994. At that time an investigatory interview will be conducted in regard to your alleged unauthorized absences from work since April 7, 1994. You are hereby advised that this interview could result in disciplinary action and that you are entitled to SMEA representation at this interview.
Accompanied by Robert Tate, a union representative, Salvato met with Trahan on April 21, and furnished documentation from his physician. Salvato was allowed to use his accumulated vacation time; he thus remained out of work.
When Salvato’s accumulated vacation time expired in mid-May, Trahan wrote him;
As of this morning, you are officially absent from work without leave. All of your available vacation time and sick time has been expended. You are hereby ordered to immediately provide this office with medical documentation which will substantiate the need for your continuing absence from work. If satisfactory documentation is not received by this office, you will be considered to have permanently and voluntarily separated yourself from employment according to the terms of Massachusetts General Law Chapter 31, section 38 (copy attached).
On May 19, 1994 Salvato delivered two documents to Trahan:
(1) A letter from Dr. Igou dated May 16, 1994:
To: Whom It May Concern:
Re: Daniel Salvato
This is to confirm that Daniel Salvato is under the care of this office. He was seen in the office on 5/2/94 for treatment.
(2) A prescription dated May 2, 1994 signed by Dr. Igou for a “lumbosacral support.”
The City rejected these documents as unsatisfactory because they did not substantiate the need for continuing absence from work.
On May 23, 1994, Trahan again wrote Salvato:
The two letters received by this office on May 19th in regard to your continued absence from work are inadequate and not acceptable. DPW Administration Division personnel informed you of this on Friday, May,20th, and also apprised you of the seriousness of this situation. Both letters clearly indicate that you have not been seen by medical personnel since May 2, 1994, and fail to support the fact that you have not been to work in the interim. I will repeat: You have been requested and must provide this office with medical documentation which will adequately substantiate the need for your continuing absence from work. This documentation must be from your current treating physician and must state (1) the exact nature of your illness/injury; (2) the reason said condition prevents you from working; (3) the course of treatment being received (including dates of treatment); and (4) a prognosis of your condition.
As stated in the letter to you dated May 18, 1994 — If satisfactory documentation is not received by this office, you will be considered to have permanently and voluntarily separated yourself from employment according to the terms of Massachusetts General Law Chapter 31, section 38.
Trahan subsequently discussed Salvato’s case with Mayor Michael E. Capuano, who on June 10, 1994, wrote Salvato:
I am writing to inform you, that the City of Somer-ville regards you as having voluntarily and permanently separated yourself from its employment.
You may within ten days after the mailing of this letter request a hearing pursuant to Massachusetts General Laws Chapter 31, section 38. I have attached a copy of the law.
Please contact Katherine Auspitz, Personnel Director, if you would like to schedule a hearing.
Salvato requested a hearing. On July 20, 1994, City Director of Personnel Katherine Auspitz conducted a hearing “with regard to the termination of Salvato’s employment pursuant to G.L.c. 31, §38.” She reported to the Mayor in writing on September 1, 1994; he *661 adopted the report on September 6, 1994, and upheld Salvato’s termination.
On August 2, 1994, the Commonwealth’s Department of Industrial Accidents approved a settlement between the City and Salvato: The City agreed to pay Salvato compensation for “temporary, total incapacity for the period April 19, 1994 to May 23, 1994.”
On September 15, 1994, Salvato filed a grievance under, the Agreement protesting his discharge, which the City denied, asserting that the grievance lacked merit and that it was neither procedurally nor substantively arbitrable.
The Association demanded arbitration: Arbitrator James Litton, Esq., having held hearings and determined that he possessed authority to determine the issue, found that the City had no “just cause” under the Agreement to dismiss Salvato for involuntary absence pursuant to c. 31, §38. He ordered the City to reinstate Salvato to his former position and to make him whole for all lost wages and benefits.
The City now moves to vacate this award.
DISCUSSION
“Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on ‘fraud, arbitrary conduct, or procedural irregularity in the hearings,’ ” Plymouth-Carver Regional School District v. J. Farmer & Co., Inc., 407 Mass. 1006, 1007 (1990).
This award is subject to vacation on narrowly-limited grounds, G.L.c. 150C, §11(a)(3), specifically, that the arbitrator exceeded his powers, see, Concerned Minority Educators of Worcester v. School Committee of Worcester, 392 Mass. 184, 187 (1984); School Committee of West Springfield v. Korbut, 373 Mass. 788, 792 (1977).
If he did, however, vacation is mandatory. “Arbitration, it is clear, may not ‘award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision’ ” Plymouth-Carver Regional School District v. J. Farmer & Co., Inc., supra, at 1007, quoting Lawrence v. Falzarano, 380 Mass. 18, 28 (1980). “Such an award is beyond the arbitrator’s powers and is therefore subject to vacation,” id.; Massachusetts Highway Department v. American Federation of State, County & Municipal Employees, 420 Mass. 13, 16 (1995).
The parties dispute whether, given the facial conflict between the Agreement and a statute, G.L.c. 31, §38, the arbitrator exceeded his powers by deciding that Salvato’s discharge was arbitrable and by applying a just cause standard. That question is subject to this court’s review, see Fall River v. Teamsters Union, Local 526, 27 Mass.App.Ct. 649, 651 (1989), review denied, 406 Mass. 1101 (1989), and cases cited; see also, School Committee of West Springfield v. Korbut, supra at 792.
The Agreement permits an election of remedies as to disputes between the City and the Association. It also applies a just cause standard to employee separations.
In contrast, the statute specifically limits the Personnel Administrator’s review to “. . .a determination of whether [the employee] failed to give proper notice of the absence to the appointing authority and whether the failure to give such notice was reasonable under the circumstances,” G.L.c. 31, §38.
The statute differentiates separation from Civil Service employment because of unauthorized absence from other grounds which require a showing of “just cause,” see Canney v. Municipal Court of the City of Boston, 368 Mass. 648, 651 (1975). When a collective bargaining agreement thus conflicts with the expressed legislative will, the agreement must yield, Leominster v. International Brotherhood of Police Officers, Local 338, 33 Mass.App.Ct. 121, 124, (1992).
If a statute specifically mandating certain terms and conditions of employment is not listed in [G.L.c. 150E,] §7(d), a bargaining agreement cannot supersede it, National Association of Government Employees, Local R1-162, v. Labor Relations Commission, 17 Mass.App.Ct. 542, 544 (1984); see School Committee of Holyoke v. Duprey, 8 Mass.App.Ct. 58, 64 (1979) (statute not listed in §7(d) held to preempt a provision in bargaining agreement).
Here, therefore, the Agreement must yield to c. 31, §38, with which it conflicts. The arbitrator, by entering an award that enforced the Agreement, required the City to commit an act prohibited by state statute; he thus exceeded his powers.
The Association argues that G.L.c. 150E permits public employers and employees to enter into collective bargaining agreements.' True, G.L.c. 150E, §8, provides that collective bargaining agreements covering public employees may provide for binding arbitration notwithstanding any contrary provision in various enumerated statutory provisions. However, c. 31, §38, is not among the enumerated statutes, thus G.L.c. 150E, §8, does not control.
A public employer and a union cannot, by bargaining, amend the statute’s requirements, National Association of Government Employees, Local R1-162, v. Labor Relations Commission, supra at 544.
This case involves the City’s procedural adherence to the Agreement’s dispute resolution clause. The problem is, however, that neither party was free to arbitrate this issue. The City could not delegate to an arbitrator the authority to disregard G.L.c. 31, §38 as it applies to the unauthorized absence of Civil Service employees.
ORDER
Accordingly, it is Ordered that Plaintiffs Motion to Vacate Arbitration Award be, and the same hereby is, *662 Allowed; and it is Further Ordered, that Judgment enter forthwith:
The award of Arbitrator James Litton, Esq., dated September 28, 1995, in the matter of Arbitration between City of Somerville and Somerville Municipal Employees Association (A.A.A. Case No. 1139-0201-95) is vacated.