PETER SISCA & another[1] *vs.* CITY OF FALL RIVER & others.[2]

No. 04-P-1756.

Suffolk. October 18, 2005. - December 7, 2005.

Present: RAPOZA, BROWN, & GRAHAM, JJ.

*Municipal Corporations,* Officers and employees, Fire department. *Civil Service,* Fire fighters, Judicial review. *Administrative Law,* Judicial review. *Fire Fighter.*

A Superior Court judge properly upheld the decision of the personnel administrator of the Commonwealth that the defendant city's termination of a fire fighter's employment for his unauthorized absence from the job comported with G. L. c. 31, § 38. [270-273] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on September 16, 2003.

The case was heard by *Margot Botsford,* J., on motions for summary judgment.

*Neil Rossman* for the plaintiffs.

*Albert R. Mason* for City of Fall River.

*Stephen W. Marshalek,* Assistant Attorney General, for Personnel Administrator of the Division of Human Resources.

GRAHAM, J. The board of fire commissioners (board) for the city of Fall River (city) voted to terminate the employment of Peter Sisca, a Fall River fire fighter, for his "unauthorized absence" from his job. See G. L. c. 31, § 38, inserted by St. 1978, c. 393, § 11.[3] After review, the personnel administrator

---

[1]Fall River Fire Fighters, Local 1314, I.A.F.F.

[2]Board of fire commissioners of Fall River and the personnel administrator of the division of human resources of the Executive Office of Administration and Finance.

[3]General Laws c. 31, § 38, provides: "For the purposes of this section, unauthorized absence shall mean an absence from work for a period of more than fourteen days for which no notice has been given to the appointing

for the Commonwealth upheld the board's decision, as did a judge of the Superior Court, acting on a complaint for declaratory relief that had been filed by Sisca and the Fall River Fire Fighters, Local 1314, I.A.F.F. (union).

From a summary judgment entered in favor of the defendants, Sisca and the union bring this appeal. They principally contend, among other claims, that § 38 is inapplicable to the instant circumstances. We disagree and affirm the Superior Court judgment.

*Background.* As of March of 2003, Sisca was employed by the Fall River fire department (department) and was a member of the union. The board was (and remains) the appointing authority for the department.

On March 9, 2003, Sisca notified the department that he was ill and would not be present for duty. Between March 9 and March 20, 2003, Sisca remained absent from work, and during this period of time he periodically telephoned the department to report that he remained ill and would not be at work.

On March 20, because Sisca's absence from his job had by then exceeded one week's time, the deputy chief of the department spoke to Sisca over the telephone, reminding Sisca to adhere to the department's protocol governing work absences and directing him to meet with the department's physician the following day (March 21) for an examination. As to the latter directive, Sisca indicated he would not be able to do so.

Sisca also informed the department that he had a scheduled appointment with another doctor (Dr. Richard Tosi) on April 9. Sisca met with Dr. Tosi on that date. Apparently Dr. Tosi cleared Sisca to return to his fire fighter job on April 9; however, Sisca did not report for duty that day. No other particulars respecting this medical examination are disclosed in the record.[4] Sisca appeared at his duty station on April 12, and he picked up his pay. While at the station that day, Sisca was told to contact the fire chief. Sisca did so on April 14 or 15; during this conversation

authority by the employee or by a person authorized to do so, and which may not be charged to vacation or sick leave, or for which no leave was granted pursuant to the provisions of section thirty-seven."

[4]Sisca never provided the department or the board with any documentation or other record from Dr. Tosi as to this April 9 visit.

the fire chief informed Sisca that the board was scheduled to take up the matter of Sisca's absence from work at a meeting on April 15.[5]

On April 15, the board held a hearing. The fire chief had recommended that the board terminate Sisca's employment for the reason that he had been absent without leave for a period of more than fourteen days. In a memorandum to the board, the fire chief pointed out that, during the time in question, Sisca neither had been granted a leave of absence (see G. L. c. 31, § 37), nor had he asked to use available sick leave, consistent with the governing protocol for exercising such leave.

The board accepted the fire chief's recommendation and voted in favor of terminating Sisca's employment immediately.[6] The board notified Sisca of its action, by letter dated April 16, 2003, and advised him of his right to be heard at a hearing before the board if he so chose.

By a letter from his counsel, Sisca timely requested such a hearing, and forcefully disputed the board's authority to act as it did under the provisions of § 38. In that letter, no assertion or suggestion was made, however, that accrued vacation or sick leave ought to be applied to cover Sisca's absence.

The board held a hearing on July 10, 2003. Sisca appeared with his counsel. Testimony was offered and other evidence was presented.[7] The board voted to uphold Sisca's termination and held fast to its decision that Sisca's absence from work for the period between March 24 and April 10 was unauthorized, and that his failure to provide notice of his absence was not due to reasonable cause. (The board's decision is set forth in its letter dated July 14, 2003, as addressed to Sisca.)

As is his right, Sisca sought review of the board's action from the personnel administrator for the Commonwealth. See G. L. c. 31, § 38. The personnel administrator solicited from

---

[5]The city contends the fire chief spoke to Sisca on April 14, informing him the matter of his continued absence was being presented to the board.

[6]The board asserts Sisca appeared at the April 15 hearing with his counsel. There is no credible evidence (apart from this conclusory allegation) in the administrative record to confirm this fact one way or the other.

[7]A transcript of the hearing was furnished to the personnel administrator for review; the same was not included in the record materials filed with this court.

the parties any and all information relevant to the events in question. On the record before her, the personnel administrator determined that Sisca had failed to provide proper notice to the department for his absence from work for the period between March 21 and April 16, and that his failure to provide such notice was not reasonable in the circumstances.[8]

Sisca and the union then commenced an action in the Superior Court, seeking declaratory relief pursuant to G. L. c. 231A,[9] as well as temporary and preliminary injunctive relief, and entry of final judgment overturning the board's decision. The city, the board, and the personnel administrator were summonsed as defendants. The parties filed cross motions for summary judgment. In acting on the motions, and on the basis of undisputed material facts, a judge granted summary judgment to the defendants, and dismissed the complaint filed by the union and Sisca.

---

[8]The personnel administrator found that, during the entire time period when Sisca was absent from work, he never "telephoned in to make a progress report as required under the terms of the Collective Bargaining Agreement and the Executive Order"; that Sisca "made no effort to submit any medical documentation" as to his absence, prior to April 12 when he allegedly discovered the fire chief's desire to talk to him about his absence; that, following Dr. Tosi's clearance, Sisca never contacted the department to inform officials of his ability to return to work; that he failed to return to work on April 10, "but still managed to make it in to pick up a paycheck on Saturday, April 12th"; and that Sisca "refused to submit to a physical examination by Dr. Vaillancourt, the doctor designated by the [department], as provided for in the Collective Bargaining Agreement."

It also bears mention that the personnel administrator deemed it significant that Sisca, at two separate hearings in this matter, gave very different reasons for not reporting to duty on April 10. First, the personnel administrator noted, at a hearing before the board, Sisca "attributed his continued absence to psychological trauma brought on by watching news reports of the second Gulf war." Less than two months later, however, at a hearing before the Division of Employment and Training, with respect to benefits for his separation from the department, he "attributed his absence to his child having to undergo emergency surgery."

[9]In this particular factual and procedural context, it was open to the plaintiffs to seek such relief. See *Canney* v. *Municipal Ct. of Boston*, 368 Mass. 648, 652-656 (1975). Compare the distinguishable (and much more typical) situation presented in *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 464 n.11 (1996), where the court observed that declaratory relief cannot be used as a substitute remedy for an action in the nature of a writ of certiorari to review the merits of a decision made by the civil service commission.

The judge considered and rejected the plaintiffs' contention that the board lacked authority, under § 38, to terminate Sisca's employment in the circumstances, or that the board ought to have charged the absent days against Sisca's accrued vacation leave. Interpreting § 38 so as to give meaning to all provisions of the statute, the judge concluded the board was not obliged to consider available sick or vacation leave before acting as it did. The judge pointed out that, in any event, Sisca had not obtained prior approval from a superior to use any vacation leave to cover his absence from his fire fighter job.

The judge concluded there was no doubt Sisca had been absent from his employment for more than fourteen days, without providing notice to the department, which conduct fell within the ambit of the definition of "unauthorized absence" in § 38; the judge also ruled there was substantial record evidence to support the personnel administrator's determination that Sisca's failure to give notice had not been reasonable in the circumstances. Thus, the judge concluded, there was no basis to disturb the finding of the personnel administrator. We concur.

*Discussion.* General Laws c. 31, § 38, defines the process and permissible grounds for an appointing authority to terminate the employment of an employee due to an "unauthorized absence," that is, an absence from work for a period of more than fourteen days for which no notice has been given the appointing authority by an employee, and which may not be charged to available sick or vacation leave, or for which no leave was granted pursuant to G. L. c. 31, § 37.

If a report of an unauthorized absence is issued, § 38 makes it clear that, unless the appointing authority restores the employee to his particular position, or grants leave under § 37, then the employee may seek review from the Commonwealth's personnel administrator. There is no right of review or opportunity to secure relief from the civil service commission by way of any procedure that is set forth in G. L. c. 31, §§ 41-45. See *Canney* v. *Municipal Ct. of Boston,* 368 Mass. 648, 654 (1975)[10]; *Police Commr. of Boston* v. *Civil Serv. Commn.,* 29 Mass. App. Ct. 470, 473-474 (1990). General Laws c. 31, § 38,

---

[10]The court in *Canney* v. *Municipal Ct. of Boston,* 368 Mass. at 651, stated: "The Legislature has clearly differentiated unauthorized absence from other

brooks no departure from the avenue of review laid down by the Legislature.

As happened here, pursuant to § 38 and upon receipt of the written notice from the board, Sisca properly requested a hearing before the board (i.e., the appointing authority). No leave of absence was asked for by him, or granted sua sponte by the board. After hearing, the board voted to keep in place the job termination due to Sisca's unauthorized absence from work. At no time has Sisca raised any issue respecting the adequacy of the board's written notices to him, nor has he made any claim that he was deprived a fair and reasonable opportunity to present his side of the story at the § 38 hearing before the board.

Section 38 expressly provides that review by the personnel administrator shall be limited to a determination whether an employee "failed to give proper notice of the absence to the appointing authority and whether the failure to give such notice was reasonable under the circumstances." G. L. c. 31, § 38, third par. See *Police Commr. of Boston* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 39 Mass. App. Ct. 360, 362 (1995), *S.C.*, 423 Mass. 1017 (1996). Here, the personnel administrator adhered to the mandate of § 38, and, on the evidence available to her, found adversely to Sisca, that he had not provided proper notice to the appointing authority and that his failure to do so had not been reasonable under the given circumstances. We concur with the judge's ruling that there was substantial evidence in the administrative record to support this determination.[11]

Sisca and the union contend that, so long as an employee has

grounds such as to constitute 'just cause.' " The court observed: "We presume that this difference in legislative treatment is based on experience obtained under prior laws," because prior to a legislative revision in 1969, G. L. c. 31 provided for review by the director of the civil service commission if the separation from service had been due to unauthorized absence. *Ibid.* The Supreme Judicial Court ruled that the standards laid down in the predecessor law to § 38 satisfied due process requirements. *Id.* at 656.

[11]While acknowledging Sisca has a different view of the situation, we are mindful of the principle that "[a] court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Police Commr. of Boston* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 39 Mass. App. Ct. at 363, quoting from *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971).

available sick or vacation leave that is sufficient to cover an absence, there can be no "unauthorized absence," as that phrase is understood by § 38. This is so, they argue, even if proper notice has not been provided to an appointing authority by an employee, nor any prior request made by him for exercising such leave. This interpretation of § 38 is fundamentally flawed and does violence to the provisions of the statute. We reject the invitation of the plaintiffs to install a revision to the statute that would in essence diminish or abolish the notice requirement of § 38, which not only serves the purpose of informing an appointing authority of an employee's absence from work, but also implicitly requests of the appointing authority that existing sick or vacation leave, depending upon the content and character of the employee's notice, ought to be used for a given duty period.[12]

The reading of § 38 offered by Sisca and the union, if accepted, would undoubtedly put a fire or police department in a highly untenable and perilous position if its employees could unilaterally decide not to report for duty on any given work day (or string of days), without notice, relying on an unspoken assumption that available sick or vacation leave can be exercised merely on a whim. Such a method of operation is wholly at odds with the language of § 38 and its underlying policies, and surely would only produce absurd results if ever put into place. See *EMC Corp.* v. *Commissioner of Rev.*, 433 Mass. 568, 574 (2001), quoting from *State Tax Commn.* v. *La Touraine Coffee Co.*, 361 Mass. 773, 778 (1972) (statute must be construed as " 'a consistent and harmonious whole, capable of producing a rational result consonant with common sense and sound judgment"). See also *Roberts* v. *Enterprise Rent-A-Car Co. of Boston*, 438 Mass. 187, 195-196 (2002). We think the interpretations reached by the personnel administrator and the judge constitute a sound and sensible reading of the terms of § 38 which "comport[] with the canons that interpretation should tend to preserve the substance of a statute rather than diminish

---

[12]Nor would the procedure as theorized by Sisca and the union be consistent with the governing collective bargaining contract, which requires that an employee's absence because of illness or injury be supported by satisfactory evidence for sick leave to be granted.

it, . . . [and] should not override common sense, . . . or produce absurd or unreasonable results." *Dillon* v. *Massachusetts Bay Transp. Authy.*, 49 Mass. App. Ct. 309, 315-316 (2000).

*Judgment affirmed.*


BROWN, J. (concurring). I do not believe we need to address Sisca's novel argument relative to the application of G. L. c. 31, § 38, to the circumstances presented here. In my view, this is a garden-variety case of judicial review of an administrative action. Sisca was afforded all the process that was due prior to each decision to discharge him. Sisca, however, did not avail himself of the opportunity to present relevant, credible evidence at either stage of the proceedings. What he offered before the personnel administrator and the board, charitably speaking, lacked any persuasive force (for the most part, there was no response at all), and could not possibly have been deemed a basis for disturbing either decision. In short, this appeal was foredoomed.